UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| ELIOS VENTURA, | ) | No. CV 05-08797-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

   This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified administrative record ("AR"). After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed and the matter remanded for further hearing.

1    Plaintiff's first issue is that the Administrative Law Judge
2 ("ALJ") did not provide legally sufficient reasons to reject the
3 opinions of two of his treating physicians, Dr. Gromis and Dr.
4 Helfgott.
5    In her decision (AR 16-21), the ALJ only briefly refers to the
6 diagnostic opinion of Plaintiff's treating orthopedic surgeon, Dr.
7 Gromis. (See AR at 17-18, 116-134.) Dr. Gromis treated Plaintiff at
8 Long Beach Medical Associates (incorrectly referred to in the decision
9 as "Long Beach Memorial Hospital") from August 12, 2002 to September
10 15, 2003. (AR 116-213.) Dr. Gromis performed an extensive examination
11 on September 15, 2003, which included both strength testing and range
12 of motion testing, encompassing each finger of the right and left
13 hand. In attempting to discern the reasons for the ALJ's depreciation
14 of Dr. Gromis' findings, the Court notes a comment in the decision
15 which focuses on the word "probable" in Dr. Gromis' diagnosis of
16 carpal tunnel syndrome, followed by a conclusion that this is "not
17 exactly a ringing endorsement of markedly limiting pathology, nor one
18 that evokes confidence in the limitations it endorses." (AR 19.) This
19 is somewhat of a non sequitur, in that it totally ignores the
20 functional testing which Dr. Gromis relied upon. In addition, the ALJ
21 herself determined that Plaintiff does suffer from bilateral carpal
22 tunnel syndrome, albeit considered mild. (See AR at 20, Finding 3.)
23 Thus, whether or not Dr. Gromis utilized the word "probable" or not is
24 quite irrelevant. What is important is to determine whether the
25 functional limitations he assessed are credible. Nothing in the
26 decision addresses that critical factor. Further, there is clearly an
27 issue with regard to Plaintiff's grip strength. Dr. Gromis assessed
28 grip strength in Plaintiff's left and right hand which is

significantly less than normal grip strength for a person in Plaintiff's circumstances. (See AR at 122.) These findings were almost identical to those of Dr. Chen, who on January 20, 2004 performed a consultative orthopedic examination ("CE") at the request of the Department of Social Security. (AR 242-247, at 244.) Despite similar objective findings, Dr. Gromis assessed significant work restrictions with regard to use of Plaintiff's dominant right thumb and hand, and also bilateral hand/wrist/forearm/elbow limitations. (See AR at 129.) In contrast, despite coming to the same objective test conclusions, Dr. Chen found no manipulative limitations. (AR 246.) This is an important issue, especially in view of the fact that the ALJ adopted Dr. Chen's conclusions, and found that Plaintiff can perform frequent handling and fingering, and can do his past relevant work as a cutting machine operator. (AR 20, Findings 6 and 7.) The Court finds a lack of specific and legitimate reasons set forth in the decision to reject Dr. Gromis' assessment of functional limitations, in favor of Dr. Chen's conclusions, when the objective tests yielded almost identical results.

In addition, the ALJ seemingly adopted part of the report of Dr. Helfgott, another treating source, noting that Dr. Helfgott assessed that Plaintiff's mild carpal tunnel symptoms were amenable to conservative treatment. (AR 18, 279.) What is not addressed in the decision, however, is Dr. Helfgott's statement that because of his carpal tunnel syndrome, Plaintiff may need job retraining, because the work he currently does "is likely to exacerbate the carpal tunnel syndrome." (AR 279.)

The critical nature of the issue of Plaintiff's ability to perform frequent handling is revealed in the testimony of the

3

vocational expert ("VE"), who, when given a hypothetical which reduced Plaintiff's handling ability from frequent to occasional not only eliminated his current position, but left the VE unable to find any available job. (AR 321-322.)  It also appears that the assessment of Plaintiff's ability to do frequent handling impacts the analysis of his disability per the Grids. (AR 322.)  On remand, that issue must also be reexamined.

In sum, the ALJ's decision fails to identify specific and legitimate reasons to reject Dr. Gromis' and Dr. Helfgott's conclusions. See Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998).

Plaintiff's second issue is that the ALJ did not properly assess his testimony regarding subjective symptoms.

In the decision, in response to Plaintiff's testimony that his hands hurt at night when he was active during the day, and that he no longer did certain activities of daily living ("ADLs") like pruning trees or digging in his yard, the ALJ noted that Plaintiff "admitted" that he is able to help with groceries, make beds, and steer the car when needed for about an hour.  The decision noted that Plaintiff has not sought or received medical treatment for his hands since September 2003 and treats his symptoms with home treatments, such as squeezing balls.  She noted that Plaintiff does not want surgery because he believes the results of carpal tunnel surgery for others has not been successful. (AR 19.)

The ALJ's cursory summary of Plaintiff's ADL's, in particular as they were utilized to depreciate his credibility, reflects an insufficient analysis.  Plaintiff completed an "Exertional Daily Activities Questionnaire" in 2003 which described serious limitations of his ADLs, completed a Pain Questionnaire (AR 89-91), which also

4

indicated that his medicines caused sleepiness; and testified to specific limitations in his fingering and manipulative abilities at the hearing. (See AR at 310-314.)  Whether or not, as the ALJ noted, Plaintiff is able to do something to help with groceries, or make beds, or steer a car for about an hour, even if accepted as correct, would not depreciate Plaintiff's credibility.  Specifically, the ALJ fails to address what is not credible about Plaintiff's specific descriptions of his limitations.  It is clear that the ALJ's credibility assessment is cursory, conclusory, unspecific, and unsupported. It fails in all respects to meet legal requirements. See Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988).

The Court will only briefly address Plaintiff's third issue, that the vocational testimony was insufficient.  There does appear, however, to be a valid issue concerning the exertional requirements of Plaintiff's past relevant work.  Thus, the ALJ must make a determination as to the exertional requirements of Plaintiff's past relevant work as a paper cutter.  Further, Plaintiff raises another issue which must be resolved, which concerns the fact that he wears wrist braces.  If indeed Plaintiff is required to do that, it must be clearly incorporated in the hypothetical to the VE.

It must also be determined whether the VE's identification of Plaintiff's past relevant work as a "cutting machine tender" correctly describes Plaintiff's past relevant work.  Further, and contrary to Plaintiff's assertion, it is not necessarily the case that the exertional requirements of Plaintiff's past relevant work must be determined by Plaintiff's own description of the requirements of that work.  Rather, once a correct occupation is identified, the issue is

whether Plaintiff is capable of assuming that job as it is performed in the national economy.

Based on the foregoing, this matter will be remanded for a new hearing consistent with this Opinion.

**IT IS SO ORDERED.**


DATED: September 28, 2006


```
                              /s/
                    VICTOR B. KENTON
                    UNITED STATES MAGISTRATE JUDGE
```